UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICAL EXTRUSION TECHNOLOGIES, INC., <br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>APOLLO MEDICAL EXTRUSION TECHNOLOGIES, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 17-cv-2150-AJB (MSB)<br><br>**ORDER:**<br><br>**(1) SUA SPONTE AMENDING AND VACATING APRIL 20, 2020 ORDER, (Doc. No. 38); AND**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, (Doc. No. 46)** |

This case involves the review of the Trademark Trial and Appeal Board's ("TTAB") determination that Plaintiff Medical Extrusion Technologies, Inc.'s ("Plaintiff") trademark is descriptive of its goods, not distinctive, and therefore non-registrable on the Principal Trademark Register. Presently pending before the Court is Plaintiff's motion for partial summary judgment. (Doc. No. 46.) Defendant Apollo Medical Extrusion Technologies, Inc. ("Defendant") opposed the motion. (Doc. No. 48.) Plaintiff also filed a reply in support of its motion. (Doc. No. 49.) For the reasons set forth below, the Court (1) sua sponte **AMENDS** and **VACATES** its April 20, 2020 order, and (2) **DENIES** Plaintiff's motion for partial summary judgment.

//

1

## I.   BACKGROUND

At the heart of the dispute, Plaintiff alleges Defendant infringed on Plaintiff's trademark and logo. (Complaint ("Compl."), Doc. No. 1.) In Plaintiff's first claim for relief, Plaintiff seeks judicial review pursuant to 15 U.S.C. § 1071(b) of a ruling by the TTAB denying registration of Plaintiff's trademark. (Compl. ¶¶ 22–25.) Plaintiff's other claims—which are currently not at issue—are for trademark infringement, unfair competition, and unfair trade practices. (*Id.* ¶¶ 29–39.)

On May 7, 2013, Plaintiff filed an application to register "Medical Extrusion Technologies" (hereinafter the "Mark") on the Principal Register under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a) ("Section 1(a)"), on the basis of first use and first use in commerce.[1] (TTAB Decision, Doc. No. 1-2 at 2–3.) The application included an alternative claim that the Mark has acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f) ("Section 2(f)").[2] (*Id.* at 3.) Essentially, this alternative claim meant if the USPTO found the Mark descriptive and non-registrable under Section 1(a), then Plaintiff would alternatively proceed under Section 2(f), which would allow registration even if the Mark is descriptive, so long as Plaintiff proved distinctiveness/secondary meaning. After the Mark was approved for publication by the

---

[1] Section 1(a) of the Trademark Act of 1946, 15 U.S.C. §1051(a), provides that "[t]he owner of a trademark used in commerce may request registration of its trademark on the principal register." A mark is deemed in use in commerce on goods when, among other things, "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto." *Id.* § 1127. The application must include applicant's date of first use of the mark and the date of first use of the mark in commerce. *Id.*

[2] Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f) provides that a mark that is merely descriptive may nonetheless be registered on the Principal Register if it "has become distinctive of the applicant's goods [or services] in commerce." Thus, the mark may be registered on the Principal Register if the applicant proves that the merely descriptive matter has acquired distinctiveness (also known as "secondary meaning") as used on the applicant's goods and/or services in commerce. *See Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1728-30 (Fed. Cir. 2012). Acquired distinctiveness is generally understood to mean an acquired "mental association in buyers' minds between the alleged mark and a single source of the product." 2 McCarthy On Trademarks And Unfair Competition § 15:5 (4th ed., June 2017 Update).

USPTO, Defendant opposed the registration on the ground that Plaintiff's Mark is merely descriptive of its goods, and so, the claim under Section 2(f) of acquired distinctiveness fails. (*Id.*)

On August 18, 2017, the TTAB issued a final ruling on the Opposition Proceeding against Plaintiff, refusing to register the Mark. The TTAB ultimately determined that: (1) the Mark was highly descriptive, and (2) Plaintiff failed to show distinctiveness. The TTAB explained that "[a] mark may be registered on the Principal Register if the applicant proves that the merely descriptive matter has acquired distinctiveness (also known as 'secondary meaning') as used on the applicant's goods and/or services in commerce." (TTAB Decision, Doc. No. 1-2 at 10 (quoting *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1728–30 (Fed. Cir. 2012).) However, the TTAB found that because the Mark was "highly descriptive," much more evidence—especially in the quantity of direct evidence from the relevant purchasing public—would be necessary to show that the designation had become distinctive. (TTAB Decision, Doc. No. 1-2 at 30.)

Then, Plaintiff filed a Complaint in this Court appealing the TTAB decision on October 19, 2017. (Doc. No. 1.) On December 4, 2017, Defendant filed a motion to dismiss, which was denied by the Court on April 10, 2018. (Doc. No. 11.) The Court ruled that Plaintiff's appeal from the TTAB's decision was timely, but that the trademark infringement, unfair competition, and unfair trade claims should be stayed pending the resolution of Plaintiff's TTAB appeal. (*Id.* at 7.) The Court held a pretrial conference on December 6, 2019. (Doc. No. 31.) There, the parties represented to the Court that there was a settlement in principle, and the Court issued a briefing schedule for Plaintiff to file its motion for summary judgment to dispose of the appeal claim.

On January 31, 2020, Plaintiff filed its first motion for partial summary judgment. (Doc. No. 33.) In the motion, Plaintiff argued the central issue is whether the trademark "Medical Extrusion Technologies" is descriptive of the goods produced and sold by Plaintiff. (Doc. No. 33-1 at 5.) As stated, the TTAB had concluded that "Applicant's proposed mark [Medical Extrusion Technologies] is highly descriptive of Applicant's

goods under Section 2(e)(1)." (Compl., Ex. A.) Plaintiff argued the TTAB erred, and no reasonable trier of fact could find that "medical extrusion technologies" describes Plaintiff's products. (Doc. No. 33-1 at 7.) Plaintiff argued "technologies" are not physical products, nor are they descriptive of physical products, including the products sold by Plaintiff. (*Id.* at 5.) To support its position, Plaintiff stated it engaged an expert linguist who concluded "the phrase 'medical extrusion technologies' is not descriptive of Applicant's [Plaintiff's] products, because it refers to the means of manufacturing those products – a set of specialized processes, procedures, and equipment – rather than the products themselves." (Disner Declaration, Doc. No. 33-4, Exhibit 1 at 14.) In addition, Plaintiff also pointed out that the Federal Circuit has held in *In re Hutchinson Technology Incorporated*, 852 F.2d 552 (Fed. Cir. 1988) that "technology" does not convey an immediate idea of the "ingredients, qualities, or characteristics of the goods" listed.

In its statement of non-opposition, Defendant stated that it did not oppose the motion because the parties have agreed in principle to a settlement of the matter, and dismissal of the entire action with prejudice. (Doc. No. 34 at 1.) Defendant further provided notice that "subject to negotiation and execution of the full and final settlement agreement, it does not and shall not oppose the entry of an Order reversing the decision by the Trademark Trial and Appeal Board, nor does it oppose this Court's finding that the phrase 'Medical Extrusion Technologies' is not descriptive of any product or service." (*Id.* at 1–2.) Based on the unopposed motion, the Court granted Plaintiff's motion for partial summary judgment on April 20, 2020. (Doc. No. 38.)

The Court held another Status Conference on May 11, 2020. Appearing that the parties did not reach settlement, the Court granted Plaintiff's request to file a second motion for partial summary judgment on its first claim for review of the TTAB decision. (Doc. No. 41.) Plaintiff filed its second motion for partial summary judgment on July 13, 2020, which this time was opposed by Defendant. (Doc. Nos. 46, 48.) The Court held a hearing on Plaintiff's motion on September 3, 2020. (Doc. No. 57.) This order follows.

//

## II. LEGAL STANDARD

Under the Lanham Act, the unsuccessful party before the TTAB may appeal the TTAB's decision to the United States Court of Appeals for the Federal Circuit on the closed record of the TTAB proceedings. *See* 15 U.S.C. § 1071(a)(4). Or, in the alternative, the losing party has the option of presenting additional evidence or raising additional claims in the United States District Court in any district where venue is proper. *See id.* § 1071(b)(1). The United States Supreme Court has held that the appropriate standard of review of findings of fact made by the PTO is not the stricter "clearly erroneous" standard, but instead the more deferential standard of the Administrative Procedures Act, 5 U.S.C. § 706. *See Dickinson v. Zurko*, 527 U.S. 150, 159–65 (1999). Although the Supreme Court did not specify whether the appropriate APA standard was "substantial evidence" or "arbitrary and capricious," the Federal Circuit has determined that the "substantial evidence" standard applies to reviews of TTAB decisions. *See On–Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000).

In an appeal to the Federal Circuit, the court reviews the TTAB's legal conclusions de novo, and reviews its factual findings for substantial evidence. *See Aycock Eng'ng, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1355 (Fed. Cir. 2009). But in an appeal presented in the district court, the district court is an appellate reviewer of facts found by the TTAB and is also a fact-finder based on new evidence introduced. *See* 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition, § 21:20, at 21–26 (4th ed., updated 2011). Although the district court's review of the TTAB's decision is considered de novo when the parties present new evidence and assert additional claims, the district court also must afford deference to any factual findings already made by the TTAB. *See id.* § 21:21. Findings of fact made by the TTAB are given great weight and are not upset unless supported by substantial evidence. *Id.*; *see also Zurko*, 527 U.S. at 162 (1999).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938). The possibility that

5

inconsistent conclusions may be drawn from the same record does not render the TTAB's finding unsupported by substantial evidence. *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000). When this standard of review is applied in the context of a motion for summary judgment, the district court applies a deferential standard of review to the TTAB's findings and views new evidence in the light most favorable to the nonmoving party. *See Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 452 (7th Cir. 2011).

## III. DISCUSSION

In determining whether Plaintiff's motion for partial summary judgment should granted, the Court will analyze: (1) whether this Court's April 20, 2020 order is still binding, and (2) whether Plaintiff has met its burden in demonstrating it is entitled to summary judgment on its TTAB judicial review claim.

### 1. This Court's April 20, 2020

First, in support of its motion, Plaintiff largely relies on this Court's April 20, 2020 order concluding the Mark is not descriptive of Plaintiff's product. (Doc. No. 38.) Plaintiff contends it originally sought registration of its Mark under Section 1(a), which requires non-descriptiveness, but does not require a showing of secondary meaning/acquired distinctiveness. (Doc. No. 1-2 at 3.) However, Plaintiff explains an examining attorney at the USPTO concluded that the Mark was at least somewhat descriptive of Plaintiff's products, and so, Plaintiff was "forced" to amend its application and pursue registration under Section 2(f) instead of Section 1(a). (Dirck Edge Declaration ("Edge Decl.") ¶ 3.) Section 2(f), as noted above, allows registration of a mark that is descriptive as long as the applicant can demonstrate secondary meaning/acquired distinctiveness. Plaintiff argues that because this Court has issued an order concluding that the Mark is *not* descriptive, and because the TTAB's decision was premised on the assumption that the Mark *is* descriptive, Plaintiff is now entitled to registration under Section 1(a) instead of Section 2(f).

In opposition, Defendant contends that because Plaintiff ultimately pursued its registration application under Section 2(f), Plaintiff has abandoned and waived its

6

argument that Section 1(a) should apply. (Doc. No. 48 at 7.) Furthermore, Defendant argues that under Section 2(f), descriptiveness is a non-issue, and Plaintiff has not shown enough to demonstrate distinctiveness/secondary meaning sufficient for summary judgment. (*Id.* at 11.)

As a preliminary matter, Plaintiff's pending motion for partial summary judgment hinges almost entirely on this Court's April 20, 2020 order. However, that order was issued based on Defendant's non-opposition to Plaintiff's first motion for partial summary judgment. Indeed, at the pretrial conference on December 6, 2019, (Doc. No. 31), the parties represented they had an agreement in principle to settle, and the parties suggested that Plaintiff file a motion for partial summary judgment to resolve the TTAB appeal and dismiss the matter entirely. Accordingly, on January 31, 2020, Plaintiff filed its first motion for partial summary judgment. (Doc. No. 33.) Defendant filed a statement of non-opposition. (Doc. No. 34.) Critically, in Defendant's non-opposition, Defendant explained "[h]aving agreed in principal with Plaintiff and its counsel to a full and final settlement of this matter, a settlement which shall include a dismissal of the entire action with prejudice and mutual general releases of all claims, [Defendant] hereby submits its Statement of Non-Opposition. . . ." (*Id.* at 1.) Defendant further provided notice that, "subject to negotiation and execution of the full and final settlement agreement, it does not and shall not oppose the entry of an Order reversing the decision by the [TTAB], nor does it oppose this Court's finding that the phrase 'Medical Extrusion Technologies' is not descriptive of any product or service." (*Id.* at 1–2.)

Based on the motion and non-opposition, the Court held "in light of the parties' briefing, particularly Defendant's non-opposition to Plaintiff's motion for partial summary judgment, the Court **GRANTS** Plaintiff's motion for partial summary judgment. The Court concludes the phrase 'medical extrusion technologies' is not descriptive of Plaintiff's products. Such a finding is established and binding on all further proceedings in this matter." (Doc. No. 38 at 4 (emphasis in original).) Now, it is apparent that the matter did not settle. (Doc. No. 48 at 5 n.2.) Nevertheless, Plaintiff still seeks to use the Court's order

7

as a sword to argue that it is entitled to summary judgment because the Court found that its Mark is not descriptive. However, the Court's order was issued based on Defendant's non-opposition and the understanding that the order would work towards a final settlement of the case. The Court did not engage in a full analysis of whether the Mark was descriptive. And, Defendant's non-opposition was expressly conditioned on the consummation of a settlement.

Appearing that this settlement did not occur, the Court recognizes the injustice to allow such an order to disadvantage Defendant without a full and fair opportunity to oppose Plaintiff's first motion for summary judgment. Therefore, in the interest of justice, the Court clarifies that its previous order was issued conditionally, based on the condition that the parties would settle. Because the condition has not occurred, the Court, on its own motion, **AMENDS** and **VACATES** its April 20, 2020 order. *See* Federal Rule of Civil Procedure 60 (a court may sua sponte correct and vacate an order); *Wellisch v. Pennsylvania Higher Educ. Assistance Agency*, Case No. 17-CV-00213-BLF, 2018 WL 2463088, at *2 (N.D. Cal. June 1, 2018) (noting the Court sua sponte amended its order); *Straube v. Chertoff*, Case No. 07-CV-1751-JMN-LS, 2008 WL 3925680, at *4 (S.D. Cal. Aug. 22, 2008) (modifying order sua sponte); *Straight Path IP Grp., Inc. v. Apple Inc.*, Case No. 16-CV-03582-WHA, 2017 WL 3967864, at *5 (N.D. Cal. Sept. 9, 2017) (granting the plaintiff's unopposed motion based on the conditions). Thus, the Court's April 20, 2020 order will no longer have a binding effect in this litigation, and the order finding that the Mark is not descriptive is hereby **VACATED**.

### 2. Whether Plaintiff is Entitled to Summary Judgment

Now, having vacated its previous order, the Court will turn to the merits of Plaintiff's instant motion, and whether Plaintiff is entitled to summary judgment based on either Section 1(a) or Section 2(f).

#### a) Section 1(a)

The Court will first review whether the TTAB erred in its determination that Plaintiff could not proceed with registration under Section 1(a), requiring non-descriptiveness.

8

1  Without the benefit of a ruling that its Mark is not descriptive, Plaintiff has not shown
2  enough to establish that it is entitled to summary judgment based on Section 1(a). The
3  TTAB found that Plaintiff had conceded descriptiveness because it pursued its application
4  under Section 2(f). As noted above, Plaintiff initially applied for registration under Section
5  1(a). However, Plaintiff states that an examining attorney at the USPTO concluded that the
6  Mark was at least somewhat descriptive of Plaintiff's products, and so, refused the
7  registration. Because of this refusal, Plaintiff contends it was "forced" to amend its
8  application and pursue registration under Section 2(f) instead. (Doc. No. 46-1 at 7; Edge
9  Decl. ¶ 3.)

10  When an applicant responds to a registration refusal based on mere descriptiveness
11  of a mark by claiming acquired distinctiveness, such amendment to seek registration under
12  Section 2(f) is considered an admission that the proposed mark is merely descriptive. *See*
13  *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed.
14  Cir. 1988). However, when a claim under Section 2(f) is presented in the alternative, it
15  does not serve as an admission of mere descriptiveness. *See In re Thomas Nelson, Inc.*, 97
16  USPQ2d 1712, 1713 (TTAB 2011). Indeed, "[a]n applicant can avoid the admission that
17  its mark is not inherently distinctive if it makes the claim of acquired distinctiveness in the
18  alternative ***and*** files an appeal of the refusal on the basis that the mark is not inherently
19  distinctive (e.g., the mark is merely descriptive)." *Id.* "If an appeal in the alternative results
20  in a finding of descriptiveness, and also the presence of acquired distinctiveness, then
21  descriptiveness, though not conceded by the applicant, would be present." (*Id.*)

22  Originally, Plaintiff claimed registration under Section 2(f) in the alternative. (Doc.
23  No. 1-2 at 12 n.7.) The examining attorney at the USPTO refused registration based on a
24  finding that the Mark was descriptive, and Plaintiff amended its application to pursue
25  registration under Section 2(f) instead. As set forth above, generally the pursuit of an
26  application under Section 2(f) is an admission of descriptiveness. This admission can be
27  avoided if Section 2(f) was pled in the alternative. Plaintiff now argues it never conceded
28  descriptiveness because it pursued its Section 2(f) claim in the alternative. But this

9

"alternative" position was waived when Plaintiff chose "not to appeal the mere descriptiveness refusal and allowed the application to be published for opposition with a Section 2(f) claim." (*Id.*) Thus, upon review of the law, the Court concludes the TTAB did not err when it concluded that Plaintiff conceded descriptiveness. *See The Cold War Museum, Inc. v. Cold War Air Museum*, Inc., 586 F.3d 1352, 92 USPQ2d 1626, 1629 (Fed. Cir. 2009) ("[W]here an applicant seeks registration on the basis of Section 2(f), the mark's descriptiveness is a nonissue; an applicant's reliance on Section 2(f) during prosecution presumes that the mark is descriptive."). Accordingly, the Court **DENIES** Plaintiff's summary judgment to the extent it is based on Section 1(a).

### 3. Section 2(f)

Next, having determined that Plaintiff is not entitled to summary judgment based on Section 1(a), the Court next addresses whether Plaintiff prevails under Section 2(f). An applicant seeking registration of a mark under Section 2(f) bears the ultimate burden of establishing acquired distinctiveness or secondary meaning. S*ee Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988). "To show that a mark has acquired distinctiveness, an applicant must demonstrate that the relevant public understands the primary significance of the mark as identifying the source of a product or service rather than the product or service itself." *In re Steelbuilding.com*, 75 USPQ2d at 1422. "[T]he applicant's burden of showing acquired distinctiveness increases with the level of descriptiveness; a more descriptive term requires more evidence of secondary meaning." *In re Steelbuilding.com*, 75 USPQ2d at 1424. A plaintiff may establish secondary meaning through direct and circumstantial evidence. *See* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:30 (4th ed. 2000). Direct evidence, such as consumer surveys and direct consumer testimony, often provides the strongest evidence of secondary meaning. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985). A plaintiff may also establish secondary meaning through circumstantial evidence, such as: exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and the number of customers, and plaintiff's

established place in the market. *See Filipino Yellow Pages v. Asian Journal Publications*, 198 F.3d 1143, 1151 (9th Cir. 1999).

Secondary meaning or distinctiveness is a question of fact. *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002). Here, the TTAB "examine[d] the evidence of record, including any evidence of advertising expenditures, sales success, length and exclusivity of use, unsolicited media coverage, and consumer studies (linking the name to a source)." (TTAB Decision, Doc. 1-2 at 18.) The TTAB weighed the evidence in the record and found that much more evidence was needed to support a finding of secondary meaning. In particular, because the Mark was highly descriptive, much more evidence, especially in the form of direct evidence from the relevant purchasing public would be necessary to show distinctiveness. *See, e.g., Levi Strauss*, 778 F.2d at 1358 ("An expert survey of purchasers typically provides the most persuasive evidence of secondary meaning.").

Here, Plaintiff has offered the declarations of its counsel, Dirck Edge, and Plaintiff's owner, Tom Bauer, in support of its motion for partial summary judgment. But Plaintiff has not specifically offered any new evidence in either of these two declarations. Instead, Plaintiff states in its brief it has "identified several other witnesses to testify at trial on the issues affecting this case, including the appeal of the TTAB decision." (Doc. No. 49 at 2.) However, Plaintiff does not give any further information about these new witnesses, or what information they will testify about. Therefore, although Plaintiff states it has new evidence to offer, the Court cannot, at this stage, conduct a de novo review of evidence that is not currently before the Court. *See* 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition, § 21:21 (4th ed., updated 2011). Thus, by Plaintiff's own admission that there are new facts for the Court to consider, Plaintiff has not demonstrated that there is no genuine dispute as to any material fact sufficient for summary judgment. As such, in light of Plaintiff's intention to offer in new evidence to support its TTAB appeal claim, it would be inappropriate for the Court to grant Plaintiff's motion for partial summary judgment at this time.

## IV. CONCLUSION

Based on the foregoing, the Court (1) sua sponte **AMENDS** and **VACATES** its April 20, 2020 order (Doc. No. 38), and (2) **DENIES** Plaintiff's motion for partial summary judgment, (Doc. No. 46).

**IT IS SO ORDERED.**

Dated: September 24, 2020

Hon. Anthony J. Battaglia
United States District Judge